IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| THE ADMINISTRATIVE COMMITTEE OF THE AMERICAN EXCELSIOR COMPANY EMPLOYEE STOCK OWNERSHIP TRUST o/b/o THE AMERICAN EXCELSIOR COMPANY EMPLOYEE STOCK OWNERSHIP TRUST, | § § § § § § § | |
| Plaintiff, | § | CIVIL ACTION NO. _____ |
| vs. | § § | |
| GREATBANC TRUST COMPANY, PENNANT MANAGEMENT, INC., and SALEM TRUST COMPANY, | § § § § | |
| Defendants. | § § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiff The Administrative Committee of The American Excelsior Company Employee Stock Ownership Trust (the "AEC ESOP Committee" or "Plaintiff"), on behalf of The American Excelsior Company Employee Stock Ownership Trust (the "AEC ESOP"), complaining of Defendants GreatBanc Trust Company ("GreatBanc"), Pennant Management, Inc. ("Pennant"), and Salem Trust Company ("Salem") (GreatBanc, Pennant, and Salem being sometimes collectively referred to herein as "Defendants"), and for causes of action would show as follows:

## I. PARTIES

### A. Plaintiff.

1. The AEC ESOP Committee is a fiduciary of the AEC ESOP pursuant to the Employee Retirement Security Act of 1974 ("ERISA") § 3(21)(A), 29 U.S.C. § 1002(21)(A). The American Excelsior Company ("AEC") established and maintains the AEC ESOP to provide retirement benefits for its employees. AEC is a Texas corporation headquartered in Arlington, Texas.

2. The AEC ESOP Committee, among other powers, is authorized to direct the administration of the AEC ESOP, to enforce the terms of the AEC ESOP, and to engage the service of counsel to assist in the performance of its duties. The AEC ESOP Committee is the proper and necessary party to any court proceeding involving any person or entity appointed as a trustee under the AEC ESOP Trust Agreement. Pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), and ERISA § 409(a), 29 U.S.C. § 1109(a), the AEC ESOP Committee is authorized to bring this action to enforce the rights of the AEC ESOP.

### B. Defendants.

3. GreatBanc is one of the nation's largest independent trust companies. Since at least November 17, 2005, GreatBanc has been the Trustee of the AEC ESOP. Pursuant to ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), GreatBanc is an ERISA Fiduciary of the AEC ESOP. GreatBanc, as part of its fiduciary responsibilities, holds and has discretionary authority to direct the investment of the AEC ESOP Trust Fund. As set forth in more detail

below, GreatBanc's breach of fiduciary duties in directing the investment of the AEC ESOP Trust Fund is a subject of this action.

4. GreatBanc is a corporation organized and existing under the laws of the State of Illinois having its principal place of business in Lisle, Illinois. GreatBanc is a wholly-owned subsidiary of U.S. Fiduciary Services, Inc. GreatBanc's headquarters is located at 801 Warrenville Road, Suite 500, Lisle, IL 60532. GreatBanc's registered agent for service of process, BFKPN Corporate Services, Inc., is located at 200 West Madison Street, Suite 3900, Chicago, IL 60606.

5. Pennant is a Securities and Exchange Commission ("SEC") Registered Investment Advisor ("RIA"), SEC Number: 801-49007, CRD Number: 106974, within the meaning of the Investment Advisor Act of 1940. According to its prior federal court filings, Pennant acts as an asset manager for clients by locating and acquiring loans guaranteed by the Full Faith and Credit of the United States through either the U.S. Small Business Administration ("SBA") or the U.S. Department of Agriculture ("USDA") Rural Development Program. As set forth in more detail below, Pennant purports to have invested AEC ESOP Trust Fund. Pennant's breach of duties, misrepresentations, and professional negligence concerning the purported investment of the AEC ESOP Trust Fund is the subject of this action.

6. Pennant is a corporation organized and existing under the laws of the State of Wisconsin having its principal place of business in Milwaukee, Wisconsin. Pennant, like

GreatBanc, is a wholly-owned subsidiary of U.S. Fiduciary Services, Inc. Pennant's headquarters is located at 11270 West Park Place, Suite 1025, Milwaukee, WI 53224. Pennant's registered agent for service of process, Walter Yurkanin, is located at 8040 Excelsior Drive, Suite 400, Madison, WI 53717.

7. Salem is Florida's largest independent trust company. According to Salem's promotional literature, Salem as trustee and with the investment advice of Pennant, manages short-term investment funds ("STIFs") for qualified plans, including the Salem Trust Short-Term Investment Fund, CUSIP #: 794527101 (the "Salem STIF"). As set forth in more detail below, Salem purports to have invested AEC ESOP Trust Fund in the Salem STIF. Salem's breach of duties, misrepresentations, and professional negligence concerning the purported investment of the AEC ESOP Trust Fund is the subject of this action.

8. Salem is a corporation organized and existing under the laws of the State of Florida having its principal place of business in Tampa, Florida. Salem, like GreatBanc and Pennant, is a wholly-owned subsidiary of U.S. Fiduciary Services, Inc.[1] Salem's registered agent for service of process, Corporation Service Company at 121 Hays Street, Tallahassee, FL 32301.

---

1 Together, U.S. Fiduciary Services, Inc.'s affiliates supervise over $30 billion in client assets.

**PLAINTIFF'S ORIGINAL COMPLAINT** PAGE 4

## II.  JURISDICTION AND VENUE

### A.  Jurisdiction.

9. This Court has jurisdiction of this action under the exclusive jurisdiction provisions of ERISA, 29 U.S.C. § 1132(e)(1). Jurisdiction also exists pursuant to 29 U.S.C. § 1331 because this is an action "arising out of the Constitution, laws, or treaties of the United States." Further, supplemental jurisdiction exists as to asserted state law claims under 28 U.S.C. § 1367 because the state law claims "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

### B.  Venue.

10. Venue is proper in this District under ERISA, 29 U.S.C. § 1132(e)(2) because this is "the district where the plan is administered, [and] where the breach took place." The AEC ESOP Committee administers the AEC ESOP from AEC's headquarters in Arlington, Texas. Venue also is proper in this District under 28 U.S.C. § 1391(b) because "a substantial part of the events or omissions giving rise to the claim occurred" in this District.

## III.  OVERVIEW

11. This action arises from Defendants' wrongdoing, including breaches of fiduciary duty, misrepresentations, and professional negligence, when first requiring and then directing, approving, and purportedly investing the entirety of the AEC ESOP Trust Fund in the Salem STIF.

12. Prior to the purported investment of the entire AEC Trust Fund in the Salem STIF on September 18, 2014, Defendants were aware and on notice of the existence of unresolved irregularities in the investments within the Salem STIF. Defendants nevertheless failed to disclose those unresolved investment fund irregularities within the Salem STIF to the AEC ESOP Committee. Defendants failed to consider alternative investments for the AEC ESOP Trust Fund. Defendants failed to diversify the AEC ESOP Fund into multiple investment vehicles, choosing instead to keep the entire AEC ESOP Trust Fund invested within wholly-owned subsidiaries of U.S. Fiduciary Services, Inc., the parent entity of all of Defendants. Defendants failed to delay the investment of the AEC ESOP Trust Fund until the Salem STIF investment fund irregularities were clarified or resolved.

13. Defendants also generally failed to act with the care, skill, prudence, and diligence required under the circumstances with regard to their representations and fiduciary and other duties to confirm and validate the viability of the Salem STIF before permitting the investment of the AEC ESOP Trust Fund into the Salem STIF. Defendants also failed to disclose material information to the AEC ESOP Committee so it could make informed decisions concerning investment of the AEC ESOP Trust Fund.

14. As a consequence of Defendants' breach of fiduciary duties and other wrongdoing, Defendants now claim that approximately twenty percent (20%) of the value of the AEC ESOP Trust Fund held for the retirement needs of AEC's participating employees was lost effectively the same day such funds were invested. Defendants are equitably and

legally responsible for the entire loss they are now seeking to lay at the feet of the AEC ESOP and its participants.

## IV. FACTS PERTINENT TO ALL CLAIMS

### A. Formation of AEC ESOP.

15. Starting as early as 1976, AEC adopted an employee stock ownership plan that through various amendments and restatements is today the AEC ESOP. The purpose of the AEC ESOP was to enable participating employees of AEC to share in the growth and prosperity of their employer, and to give participants a means of accumulating assets for their future financial security. This occurred by allowing employee participants to acquire stock ownership interests in AEC through the AEC ESOP. There are currently approximately 180 participants of the AEC ESOP. The AEC ESOP was successful in benefitting these participants.

### B. GreatBanc's Position as Trustee of the AEC ESOP.

16. Starting on or about November 17, 2005, GreatBanc became and has remained the sole Trustee of the AEC ESOP. As the Trustee, GreatBanc became a fiduciary of the AEC ESOP both under the terms of the AEC ESOP Trust documents as well as under ERISA. As set forth in Section 9.4 of the AEC ESOP Trust documents, GreatBanc agreed to discharge its duties:

> "solely in the interest of the Participants and the Beneficiaries and:

      (a)    For the exclusive purpose of providing benefits to the Participants and their Beneficiaries and defraying reasonable expenses of administering the Plan;

      (b)    With the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims; and

      (c)    In accordance with the documents and instruments governing the Plan, insofar as such documents and instruments are consistent with the provisions of Title I of [ERISA]."

17.    Further, GreatBanc as Trustee had full power and discretion with regard to the investment choices made within the AEC ESOP. Specifically, the AEC ESOP Trust documents provide in Section 7.1 that:

> "**Full Authority**. The Trustee has the full power by the provisions of this Article VI to make such sales and investments from time to time in the Trust Fund and to take every action with respect to investments held herein as the Trustee, in its sole discretion, deems proper."

### C.    Defendants' Investment of the Entire AEC ESOP Trust Fund.

18.    On June 19, 2014, the stock of AEC held within the AEC ESOP Trust Fund was sold for $13,607,708.25. Given the June 19, 2014, stock sale, the determination was made to plan for and then transfer the AEC ESOP participants accounts to their American Excelsior Company 401(k) Savings Plan ("401(k) Savings Plan") account and/or to allow participants at that same time to withdraw a portion or all of their AEC ESOP account balance. For such distribution to occur, however, the assets held within the AEC ESOP Trust

Fund needed to be in the form of cash. Thus, to plan for the transfer, by August 6, 2014, all AEC ESOP Trust Fund assets had been put into cash.

19.    In August and September of 2014, plans were being made and documents were being prepared to effectuate the transfer of AEC ESOP Trust Fund. Until at least September 18, 2014, the AEC ESOP Trust Fund remained solely in cash so as to be ready to effectuate the planned transfer.

20.    On September 17, 2014, and despite the fact that the planned distribution was to occur in the first part of October 2014, GreatBanc determined and advised that the cash within the AEC ESOP Trust Fund must immediately be invested in a money market fund. GreatBanc determined that it would invest the entire AEC ESOP Trust Fund in the Salem STIF. As far as the AEC ESOP Committee was advised, GreatBanc did not consider investing any part of the AEC ESOP Trust Fund in any alternative short-term investments other than the Salem STIF being offered through GreatBanc's related entities, Pennant and Salem.

21.    On September 18, 2014, GreatBanc directed that the entire AEC ESOP Trust Fund be invested in the Salem STIF. Pennant and Salem claim to have invested the entire AEC ESOP Trust Fund into the Salem STIF.

22.    As acknowledged by Pennant, clients invest in Pennant sponsored funds "because the obligations are guaranteed by the Full Faith and Credit of the United States of America, and are viewed by them as essentially risk-free." Salem represents that the Salem

STIF "will invest only in obligations of the U.S. Government, its agencies or instrumentalities; or, repurchase agreement and other money funds if their investments are limited to the same credit quality." Salem further states that while it is the trustee of the Salem STIF, the Salem STIF is managed "based on the investment advice of Pennant Management, Inc., the investment advisor to the trust." The Salem STIF is purportedly designed and represented to be a liquid investment appropriate for retirement funds like the AEC ESOP Trust Fund.

23.     On September 24, 2014, GreatBanc was advised consistent with prior discussions and planning to return the entirety of the AEC ESOP Trust Fund back into cash by September 30, 2014. GreatBanc did not advise of any issues that would delay such request. Then, in the early morning of September 30, 2014, and at multiple other times during that day, GreatBanc was again advised to liquidate and to confirm that the AEC ESOP Trust Fund investment had been returned to cash.

### D.     Facts Demonstrating Defendants' Misconduct.

24.     It was only late in the afternoon of September 30, 2014, only less than two weeks after the AEC ESOP Trust Fund alleged investment into the Salem STIF, that GreatBanc advised that the AEC ESOP Trust Fund could not then be liquidated, converted to cash, or later distributed, either in whole or in part, but instead had been frozen by Pennant as a result of fraud discovered in the Salem STIF investments during their due diligence review. GreatBanc advised that the alleged fraud had rendered approximately twenty percent (20%)

of the Salem STIF illiquid. On or about that same day, Pennant released a statement advising that "it discovered that loans it purchased from a single counterparty may be fraudulent."[2] What the AEC ESOP Committee has learned since these disclosures is even more troubling.

25. Pennant now admits that "[i]n the days immediately preceding September 18, 2014, during a routine review of the documentation regarding the FFF [fraudulent] Loans, inconsistencies came to light. Those inconsistencies triggered a more thorough review." **Despite knowledge of these so-called "inconsistencies" and the need for a "more thorough review" prior to September 18, 2014**, Defendants failed to disclose those unresolved investment fund irregularities within the Salem STIF to the AEC ESOP Committee. Defendants failed to consider alternative investments for the AEC ESOP Trust Fund. Defendants failed to diversify the AEC ESOP Trust Fund into multiple investment vehicles, choosing instead to invest the entire AEC ESOP Trust Fund within the then questionable investment vehicle of the wholly-owned subsidiaries of U.S. Fiduciary Services, Inc., the parent entity of all of Defendants. In fact, by e-mail on September 16 and by phone on September 17, 2014, GreatBanc recommended the Salem STIF to the AEC ESOP Committee despite the existence of knowledge of its potential problems, and then Defendants

---

2 By press release date October 9, 2014, Salem confirmed that:

"· [Salem] has valued the First Farmers Financial repurchase agreements at $0, resulting in a $16 million loss by the [Salem] STIF;

· The net asset value of each Unit of the [Salem] STIF (the "NAV") has fallen below $1.00, to a NAV of $.80; and,

· [Salem] has suspended any further acquisition or redemption of Units in the [Salem] STIF."

failed to delay the investment of the AEC ESOP Trust Fund until the Salem STIF irregularities were clarified or resolved.

26.     Pennant now also admits that the USDA within an hour of an e-mail request in the middle of the day on September 18, 2014, advised Pennant that the suspect loans did not exist. The Defendants nevertheless took no action on September 18, 2014 (or on any later date) to reject, prevent, put on hold, or otherwise stop the alleged investment of the AEC ESOP Trust Fund into the Salem STIF. In fact, on information and belief, the Salem STIF continued to accept investment funds through September 24, 2014.

27.     Pennant also acknowledges that after first being introduced in the first half of 2013, neither it nor anyone else sought to independently verify through the USDA's Guaranteed Loan System the validity of any loans being purchased from the no suspect so-called "non-traditional" USDA loan originator. As evidenced by the less than one hour it took to confirm by e-mail to the USDA of the non-existence of the loans purchased by Pennant, Salem, and the Salem STIF, Pennant and Salem were clearly less then diligent and in fact utterly reckless in their purchase of loans meant to be used in a fund that was viewed by clients as "essentially risk-free."

28.     Defendants have now joined together to freeze and not distribute the AEC ESOP Trust Fund despite the fact that the fraudulent loans acquired by the Salem STIF in the first place were acquired long prior to the deposit of the AEC ESOP Trust Fund with Pennant

and Salem. As such, there is no valid ground to freeze and fail to distribute the AEC ESOP Trust Fund as previously contemplated.

29. There is no excuse for Defendants conduct in allowing the AEC ESOP Trust Fund to be put at risk. Not only is there no excuse, Defendants' wrongdoing, misrepresentations, and concealment were negligent, grossly negligent, and violated their duties to the AEC ESOP, including fiduciary duties and their duty not to affirmatively misrepresent the safety and nature of the investments being made for the benefit of the AEC ESOP Trust Fund and participants. The AEC ESOP Committee and the participants reasonably relied on Defendants to fulfill their fiduciary and other duties. Defendants participated or acquiesced in investment decisions that resulted in great financial risk and harm to the AEC ESOP and the participants. Defendants in fact concealed such information from the AEC ESOP Committee for their own benefit so as to continue the AEC ESOP Trust Fund investment into the Salem STIF. Defendants' wrongful conduct precluded the AEC ESOP Committee from taking further steps to preserve the value of the AEC ESOP Trust Fund.

## V.  CAUSES OF ACTION

### A.  Count One: Breach of Fiduciary Duty (GreatBanc).

30. The allegations set forth in paragraphs 1 through 29 above are incorporated herein by reference.

31. Under ERISA and as delineated in the AEC ESOP Trust documents, GreatBanc owed a fiduciary duty to the AEC ESOP to act with care, skill, prudence, and diligence and in the AEC ESOP's best interests, to refrain from committing any act or omission detrimental to the AEC ESOP, and to disclose and ensure that the AEC ESOP Committee had all the information it needed to make prudent decisions.

32. GreatBanc breached its fiduciary duty to the AEC ESOP as detailed above. The AEC ESOP has been damaged as a proximate result of GreatBanc's breach of fiduciary duty. GreatBanc's breaches of fiduciary duty deprived the AEC ESOP Committee of the opportunity to make informed decisions.

33. Therefore, the AEC ESOP Committee, on behalf of the AEC ESOP, is entitled to recover from and demands judgment and equitable relief against GreatBanc for the return of all monies of the AEC ESOP Trust Fund in GreatBanc's possession or control beginning on or before September 18, 2014, as well as actual and any and all other damage as allowed under ERISA's statutory remedies, as well as pre and post-judgment interest, costs, and attorneys' fees, for which the AEC ESOP Committee now sues GreatBanc.

### B.  Count Two: Breach of Fiduciary Duty (Pennant).

34. The allegations set forth in paragraphs 1 through 29 above are incorporated herein by reference.

35. Under ERISA and/or Section 206 of the Investor Advisors Act of 1940 and/or under the common law of the state of Texas, Pennant owed a fiduciary duty to the AEC

ESOP to act with care, skill, prudence, and diligence and in the AEC ESOP's best interests, to refrain from committing any act or omission detrimental to the AEC ESOP, and to disclose and ensure that the AEC ESOP Committee had all the information it needed to make prudent decisions.

36. Pennant breached its fiduciary duty to the AEC ESOP as detailed above. The AEC ESOP has been damaged as a proximate result of Pennant's breach of fiduciary duty. Pennant's breaches of fiduciary duty deprived the AEC ESOP Committee of the opportunity to make informed decisions.

37. Therefore, the AEC ESOP Committee, on behalf of the AEC ESOP, is entitled to recover from and demands judgment and equitable relief against Pennant for the return of all monies of the AEC ESOP Trust Fund put in Pennant's possession or control beginning on or before September 18, 2014, as well as actual, punitive, and any and all other damage as allowed under ERISA's statutory remedies, and/or the Investment Advisors Act of 1940, and/or under the common law of the state of Texas, as well as pre and post-judgment interest, costs, and attorneys' fees, for which the AEC ESOP Committee now sues Pennant.

### C.  Count Three: Breach of Fiduciary Duty (Salem).

38. The allegations set forth in paragraphs 1 through 29 above are incorporated herein by reference.

39. Under ERISA and/or under the common law of the state of Texas, Salem owed a fiduciary duty to the AEC ESOP to act with care, skill, prudence, and diligence and in the

AEC ESOP's best interests, to refrain from committing any act or omission detrimental to the AEC ESOP, and to disclose and ensure that the AEC ESOP Committee had all the information it needed to make prudent decisions.

40. Salem breached its fiduciary duty to the AEC ESOP as detailed above. The AEC ESOP has been damaged as a proximate result of Salem's breach of fiduciary duty. Salem's breaches of fiduciary duty deprived the AEC ESOP Committee of the opportunity to make informed decisions.

41. Therefore, the AEC ESOP Committee, on behalf of the AEC ESOP, is entitled to recover from and demands judgment and equitable relief against Salem for the return of all monies of the AEC ESOP Trust Fund put in Salem's possession or control beginning on or before September 18, 2014, and all actual, punitive, and any and all other damage as allowed under ERISA's statutory remedies and/or under the common law of the state of Texas, as well as pre and post-judgment interest, costs, and attorneys' fees, for which the AEC ESOP Committee now sues Salem.

### D. Count Four: Negligent Misrepresentations (Pennant and Salem).

42. The allegations set forth in paragraphs 1 through 29, and 34-41 above are incorporated herein by reference.

43. Pennant and Salem made negligent material misrepresentations concerning the AEC ESOP Trust Fund investment into the Salem STIF. The AEC ESOP justifiably relied on

Pennant's and Salem's misrepresentations and has suffered actual damages proximately caused by such negligent material misrepresentations.

44. Therefore, the AEC ESOP Committee, on behalf of the AEC ESOP, is entitled to recover from and demands judgment against Pennant and Salem for all actual damages sustained by the AEC ESOP and the AEC ESOP Trust Fund as well as pre and post-judgment interest and costs for which the AEC ESOP Committee now sues Pennant and Salem.

45. Further, as Pennant's and Salem's negligent material misrepresentations were made knowingly and/or recklessly and in wanton disregard of the rights of the AEC ESOP, the AEC ESOP Committee, on behalf of the AEC ESOP, is also entitled to recover punitive damages from Pennant and Salem, for which the AEC ESOP Committee now sues Pennant and Salem.

### E.  Count Five: Professional Negligence and Gross Negligence (Pennant and Salem).

46. The allegations set forth in paragraphs 1 through 29, 34-41, and 42-45 above are incorporated herein by reference.

47. Pennant and Salem were professionally negligent and grossly negligent with regard to the AEC ESOP Trust Fund investment into the Salem STIF. The AEC ESOP has suffered actual damages proximately caused by such professional negligence and gross negligence.

48. Therefore, the AEC ESOP Committee, on behalf of the AEC ESOP, is entitled to recover from and demands judgment against Pennant and Salem for all actual damages sustained by the AEC ESOP and the AEC ESOP Trust Fund as well as pre and post-judgment interest and costs for which the AEC ESOP Committee now sues Pennant and Salem.

49. Further, as Pennant and Salem were grossly negligent in their conduct, the AEC ESOP Committee, on behalf of the AEC ESOP, is also entitled to recover punitive damages from Pennant and Salem, for which the AEC ESOP Committee now sues Pennant and Salem.

**F.    Not an Election of Remedies and Alternative Pleading.**

50. By bringing the above causes of action, the AEC ESOP Committee does not waive or release any rights, claims, causes of action or defenses, or make any election of remedies which it now has or may have, but expressly reserves all such rights, claims, causes of action and defenses, against GreatBanc, Pennant, Salem or any other persons, entities, or parties, whether or not the same have been asserted or may hereafter be asserted in this or any other proceeding.

51. To the extent any claim or claims asserted or any request or requests for relief sought are inconsistent with any other asserted claim or claims or any other request or requests for relief sought, or are in any way pre-empted by ERISA or any other governing law, such claim or claims or request or requests for relief are asserted in the alternative without effecting other asserted claims or the availability of any other types of relief.

## VI. JURY DEMAND

52. The AEC ESOP Committee, on behalf of the AEC ESOP demands a trial by jury.

## VII. PRAYER FOR RELIEF

53. The AEC ESOP Committee, on behalf of the AEC ESOP, respectfully requests the following relief:

   a. that Defendants be served with process and be required to answer in the time and manner prescribed by law;

   b. that the AEC ESOP Committee, on behalf of the AEC ESOP, have judgment against Defendants, jointly and severally, as set forth and demanded above;

   c. that the AEC ESOP Committee, on behalf of the AEC ESOP, have judgment against Defendants, jointly and severally, for its reasonable and necessary attorneys' fees, expert fees, and costs incurred in prosecuting this action, and pre and post-judgment interest at the highest rate(s) allowed by law; and

   d. that the AEC ESOP Committee, on behalf of the AEC ESOP, have such other and further relief, both general and special, at law or in equity, to which it may show itself justly entitled.

Respectfully Submitted,

FIGARI & DAVENPORT, LLP

By: /s/ Michael G. Brown
    Michael G. Brown
    State Bar No. 03153800
    mike.brown@figdav.com
    Bill E. Davidoff
    State Bar No. 00790565
    bill.davidoff@figdav.com

901 Main Street, Suite 3400
Dallas, TX 75202
(214) 939-2000
(214) 939-2090 (FAX)

ATTORNEYS FOR PLAINTIFF
THE ADMINISTRATIVE COMMITTEE OF
THE AMERICAN EXCELSIOR COMPANY
EMPLOYEE STOCK OWNERSHIP TRUST, ON
BEHALF OF THE AMERICAN EXCELSIOR
COMPANY EMPLOYEE STOCK OWNERSHIP
TRUST