

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| THE ADMINISTRATIVE COMMITTEE OF | § | |
| THE AMERICAN EXCELSIOR COMPANY | § | |
| EMPLOYEE STOCK OWNERSHIP TRUST, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 4:14-CV-825-A |
| | § | |
| GREATBANC TRUST COMPANY, ET AL., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Came on for consideration the motion of defendant KPMG LLP

("KPMG") to dismiss and compel arbitration or, in the

alternative, to dismiss plaintiff's second amended complaint. The

court, having considered the motion, the response of plaintiff,

the Administrative Committee of the American Excelsior Company

Employee Stock Ownership Trust, the reply, the record, and

applicable authorities, finds that the motion to dismiss should

be granted.

I.

## Background

On October 10, 2014, plaintiff filed its original complaint

in this action, asserting claims against GreatBanc Trust Company

("GreatBanc"), Pennant Management, Inc. ("Pennant"), and Salem

Trust Company ("Salem")(collectively "the GreatBank defendants").

On June 9, 2015, having obtained leave of court, plaintiff filed

a first amended complaint adding KPMG as a defendant. Thereafter, on July 16, 2015, again having obtained leave of court, plaintiff filed its second amended complaint.

Plaintiff alleges: Plaintiff is an ERISA fiduciary and is authorized to bring, and brings, claims on behalf of "The American Excelsior Company Employee Stock Ownership Trust, Plan, or surviving plans" (the "AEC ESOP"). GreatBanc is one of the country's largest independent trust companies and has, since November 2005, served as the trustee of the AEC ESOP, holding discretionary authority to direct the investment of AEC ESOP's trust fund. Pennant is a registered investment advisor of the Securities and Exchange Commission and acts as an asset manager for clients by locating and acquiring loans guaranteed by the full faith and credit of the United States through the U.S. Small Business Administration or U.S. Department of Agriculture Rural Development Program. Salem is Florida's largest independent trust company. Salem acts as trustee and with the investment advice of Pennant manages short-term investment funds, including the Salem Trust Short-Term Investment Fund, CUSIP # 794527101 (the "Salem STIF"). KPMG is one of the largest audit, tax, and advisory firms in the United States.

Further: On June 19, 2014, the stock held in the AEC ESOP was sold for over $13 million dollars. Plans were made for AEC

2

ESOP participants to be able to transfer their accounts to their 401(k) savings plans or to withdraw some or all of their account balances. For that plan to work, all AEC ESOP trust funds needed to be put into cash. Nevertheless, on September 17, 2014, GreatBanc invested all of the cash proceeds of the AEC ESOP trust fund in the Salem STIF, offered through Pennant and Salem. On September 30, 2014, GreatBanc was advised to liquidate the investment so that the planned transfer could take place. However, fraud was discovered in the Salem STIF, rendering approximately 20% thereof illiquid, and the funds invested were frozen.

Plaintiff alleges that the GreatBanc defendants breached fiduciary duties owed to the AEC ESOP; and that Salem and Pennant made negligent misrepresentations, were grossly negligent, and committed "professional negligence."

Plaintiff alleges that KPMG performed its work as auditor of the Salem STIF in a manner inconsistent with Generally Accepted Auditing Standards and Generally Accepted Accounting Principles. Plaintiff refers only to an annual report delivered by KPMG on April 4, 2014 regarding Salem STIF's financial statements "as of year-end." Doc. 28, ¶ 35.[1] Plaintiff sues KPMG for negligent

---

[1]The "Doc." reference is to the court's docket in this action. Item 28 is plaintiff's second amended complaint.

misrepresentation, professional malpractice, and aiding and abetting breach of fiduciary duties by the GreatBanc defendants.

## II.

### Grounds of the Motion to Dismiss

KPMG urges alternate grounds for dismissal. First, KPMG says that its engagement agreement to perform the audit at issue contains a provision mandating binding arbitration. Although plaintiff is not a signatory to the agreement, since plaintiff seeks to bring claims as though it were a party, it should be bound by the agreement to arbitrate. And, to the extent plaintiff brings derivative claims, it is also bound by the agreement. In addition, plaintiff lacks standing to pursue derivative claims, having failed to allege that demand was made or would have been futile. (These are described as KPMG's Rule 12(b)(1) and (b)(3) arguments.)

In the alternative, KPMG says that if plaintiff's claims are not subject to arbitration, that each fails as a matter of law. (This is described as KPMG's Rule 12(b)(6) argument.)

III

Analysis

A.   Arbitration

The evidence adduced[2] to support KPMG's motion shows that on January 23, 2014, KPMG and Salem entered into an engagement agreement pursuant to which KPMG was to provide audit services to the investment trust comprised of the Salem STIF. Doc. 34, at APP005-012. The agreement provided that Salem was responsible for the Salem STIF's financial statements, compliance with laws and regulations, and prevention and detection of fraud. Id. at APP008. Further, KPMG would "report to those charged with governance." Id. at APP007. In addition, the agreement contains provisions for dispute resolution by non-binding mediation, then binding arbitration of all disputes arising out of or related to the agreement. Id. at APP008-009.

KPMG contends that plaintiff's claims are subject to the arbitration provision since the claims asserted could only be brought by or on behalf of the Salem STIF. Plaintiff does not purport to bring its claims in that capacity. Nor is there any reason to believe it would have authority to do so. In this regard, KPMG is correct: plaintiff would lack standing to assert

---

[2]The court may consider and decide for itself the factual issues that determine jurisdiction and venue. See, e.g., Ambraco, Inc. v. Bossclip B.V., 570 F.3d 233, 238 (5th Cir. 2009); Williamson v. Tucker, 645 F.2d 404, 413 (5th Cir. 1981).

the claims. But, for this reason, compelling arbitration as KMPG requests would not make sense.

B.   Failure to State a Claim

KPMG alternatively alleges that plaintiff has failed to state a claim against it upon which relief can be granted. The court agrees.

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides, in a general way, the applicable standard of pleading. It requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks and ellipsis omitted). Although a complaint need not contain detailed factual allegations, the "showing" contemplated by Rule 8 requires the plaintiff to do more than simply allege legal conclusions or recite the elements of a cause of action. Twombly, 550 U.S. at 555 & n.3. Thus, while a court must accept all of the factual allegations in the complaint as true, it need not credit bare legal conclusions that are unsupported by any factual underpinnings. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) ("While legal conclusions can provide

6

the framework of a complaint, they must be supported by factual

allegations.").

Moreover, to survive a motion to dismiss for failure to

state a claim under Rule 12(b)(6), the facts pleaded must allow

the court to infer that the plaintiff's right to relief is

plausible.  Iqbal, 556 U.S. at 678.  To allege a plausible right

to relief, the facts pleaded must suggest liability; allegations

that are merely consistent with unlawful conduct are

insufficient. Id. In other words, where the facts pleaded do no

more than permit the court to infer the possibility of

misconduct, the complaint has not shown that the pleader is

entitled to relief. Id. at 679. "Determining whether a complaint

states a plausible claim for relief . . . [is] a context-specific

task that requires the reviewing court to draw on its judicial

experience and common sense."  Id.

In considering a motion under Rule 12(b)(6), the court may

consider documents attached to the motion if they are referred to

in the plaintiff's complaint and are central to the plaintiff's

claims. Scanlan v. Tex. A&M Univ., 343 F.3d 533, 536 (5th Cir.

2003). The court may also refer to matters of public record.

Davis v. Bayless, 70 F.3d 367, 372 n.3 (5th Cir. 1995); Cinel v.

Connick, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994). This includes

taking notice of pending judicial proceedings. <u>Patterson v. Mobil</u>
<u>Oil Corp.</u>, 335 F.3d 476, 481 n.1 (5th Cir. 2003).

There must be privity (or something closely akin to privity)
to state a malpractice claim, no matter which state's law should
apply. <u>See, e.g.</u>, <u>Blu-J v. Kemper CPA Group</u>, 916 F.2d 637, 640
(11th Cir. 1990); <u>McCamish, Martin, Brown & Loeffler v. F.E.</u>
<u>Appling Interests</u>, 991 S.W.2d 787, 792 (Tex. 1999); <u>Credit</u>
<u>Alliance Corp. v. Arthur Andersen & Co.</u>, 483 N.E.2d 110, 118
(N.Y. 1985).[3] Here, there is no privity between KPMG and
plaintiff; nor is there any allegation sufficient to state a
claim that KPMG knew or should have known that plaintiff was or
would be relying on its audit. To the contrary, such a claim
would not be plausible inasmuch as plaintiff admits that it had
already entered into an agreement with Salem dated August 1,
2012, long before KPMG's retention, to invest the AEC ESOP. That
same agreement provided that Salem would obtain an audit by "by
an independent auditor responsible only to [Salem]." Doc. 40, at
52.

With regard to plaintiff's negligent misrepresentation
claim, plaintiff has pleaded nothing more than conclusory

---

[3]Under New York law, for a nonparty to assert a malpractice claim against an accountant, it must show that (1) the accountant was aware that the financial reports would be used for a particular purpose; (2) in the furtherance of which that party was intended to rely; and (3) some conduct on the part of the accountant linking him to that party, evincing the accountant's understanding of that party's reliance. <u>Credit Alliance Corp. v. Arthur Andersen & Co.</u>, 483 N.E.2d 110, 118 (N.Y. 1985).

allegations regarding its reliance. Plaintiff has pleaded: GreatBanc had full power and discretion with regard to the investment of the AEC ESOP. Doc. 28, at ¶18. On September 18, 2014, GreatBanc invested the AEC ESOP in the Salem STIF. Id., at ¶ 22. Plaintiff relied on the GreatBanc defendants, who concealed information and made decisions that resulted in great financial harm to plaintiff. Id., at ¶ 30. KPMG delivered an annual report on April 4, 2014. Id., at ¶ 35. The audit was inadequate. Id., at ¶ 45.

There are no facts pleaded as to reliance. Rather, the only facts pleaded show that plaintiff relied on GreatBanc to make the investment. And, plaintiff has admitted that the agreement regarding investment was entered almost five months before KPMG was retained, Doc. 40, at 6, and that, pursuant to the Salem STIF agreement, an annual financial statement would be provided to investors "[i]f required by applicable law. Id., at 53. There is no allegation that plaintiff received, much less reviewed, the KPMG audit.[4]

An accountant or auditor may limit its liability by disclaimers or other provisions in its agreement for services.

---

[4]The court notes that the complaint says that Pennant was advised on September 18, 2014, that the "suspect loans did not exist." Doc. 28, at ¶ 27. One wonders, as a practical matter, how or why KPMG should have addressed the issue in the 2013 audit delivered in April 2014. In other words, no facts are pleaded to show that KPMG knew its audit was unsupported, as plaintiff now claims.

McCamish, 991 S.W.2d at 794. Here, the audit agreement specifically provides that KPMG's responsibility is to "those charged with governance" of the Salem STIF. Doc. 34, at APP007. Moreover, the agreement does not call for the preparation of any additional reports to be issued for any other persons or purposes. Id., at APP010 , APP012. Further, the audit report is addressed to "The Participants and Salem Trust Company as Trustee of the Salem Trust Short Term Investment Fund." Doc. 40, at 69. It is not addressed to potential participants or any other class into which plaintiff might fall. Plaintiff has not pleaded any facts to show that it was a person "charged with governance" or that KPMG otherwise knew that plaintiff would receive or rely on its report.

KPMG's motion spells out why plaintiff cannot state a claim for aiding and abetting liability. Plaintiff has not responded to that argument and the court interprets plaintiff's failure to do so as an abandonment of that claim.

IV.

ORDER

For the reasons discussed herein,

The court ORDERS that KPMG's motion to dismiss for failure to state a claim upon which relief may be granted be, and is

10

hereby, granted, and plaintiff's claims against KPMG be, and are hereby, dismissed.

The court determines that there is no just reason for delay in, and hereby directs, entry of final judgment as to the dismissal of plaintiff's claims against KPMG.

SIGNED September 30, 2015.

_____
JOHN MCBRYDE
United States District Judge

11